IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRIAN TIMMONS and
DEBRYNNA GARRETT-ALFRED,

Plaintiffs,

v.

CITY OF TAMPA, FLORIDA and
JOHN BUSHELL in his individual
capacity as Deputy Chief of the Tampa
Police Department,

Defendants.

CASE NO. 8:01-cv-728-T-24-EAJ

## PLAINTIFFS' COMPLAINT AND REQUEST FOR JURY TRIAL

COME NOW, Brian Timmons and Debrynna Garrett-Alfred, by and through their undersigned counsel, and hereby sue the defendants, City of Tampa, Florida, and John Bushell, and allege:

### INTRODUCTION

1. This is an action brought by two United States citizens and former officers of the City of Tampa Police Department who were terminated from their employment in violation of their Fifth and Fourteenth Amendment rights to be free from the deprivation of property and liberty interests without due process of law.

2. Plaintiffs allege violation of their federal civil rights, actionable pursuant to 42 U.S.C. §1983. Plaintiffs seek compensatory relief, back pay and front pay, punitive damages, and all costs, including attorney's and expert witness fees, as provided by 42 U.S.C. §1988.

1

## JURISDICTION

3. This action arises under 42 U.S.C. §§ 1983 & 1988. Jurisdiction is founded on 28 U.S.C. §§ 1331 & 1343(a)(3)&(4).

4. All incidents material to this action occurred in Hillsborough County, Florida. Venue is thus proper in the Tampa Division of the Middle District of Florida pursuant to 28 U.S.C. § 1391(b) and Local Rule 1.02(b)(4).

## PARTIES

5. Plaintiff Brian Timmons is an adult citizen and resident of the State of Florida and of Hillsborough County.

6. Plaintiff Debrynna Garrett-Alfred (*nee* Alfred), is an adult citizen and former resident of the State of Florida and of Hillsborough County.

7. Defendant John Bushell was, at all times relevant to the matters addressed in this lawsuit, employed as the Deputy Chief of the Tampa Police Department.

8. Defendant City of Tampa is a municipality organized under the laws of the State of Florida and is a political subdivision of Hillsborough County.

## FACTS

9. On December 24, 1996, plaintiffs, on-duty officers of the Tampa Police Department, responded to a traffic crash in their patrol area.

10. Plaintiffs investigated the crash, and took an individual into custody. Plaintiffs also noted that the crash dislodged a stop sign and directional arrow.

11. Plaintiffs reported the incident to their immediate supervisor, Sergeant Amy Keck. They also reported to her, and to a signal technician (responsible for repairing the equipment) that the traffic sign and directional arrow were displaced.

12. Sergeant Keck refused to travel to the scene of the traffic crash. Instead, she ordered plaintiffs to leave the scene and report to her personally.

13. Plaintiffs personally reported to Sergeant Keck, and repeated their

observation of the downed stop sign and directional arrow. She instructed plaintiffs to transport their arrestee to jail.

14. The equipment had still not been fixed the next day, Christmas, and a fatal accident occurred at the intersection.

15. As of December 24, 1996, no Tampa Police Department policy required officers to remain at the scene in these circumstances. Soon thereafter, the policy was changed to require the officers to remain present.

16. In early January, 1997, plaintiffs received notice of possible disciplinary action regarding their departure from the scene of the traffic crash.

17. Tampa Police Department investigators interviewed plaintiffs and Sergeant Keck. Sergeant Keck wrote three materially different versions of the events of December 24, 1996. However, she denied that plaintiffs informed her that the stop sign and directional arrow were destroyed.

18. Plaintiffs continued to inform investigators that they told Sergeant Keck about the downed equipment.

19. Tampa Police Department investigators conceded that Sergeant Keck's version was completely different than plaintiffs', and that a credibility determination was critical.

20. In February, 1997, the Tampa Police Department convened a five member Complaint Review Board. Its members included three captains and two sergeants with the Tampa Police Department.

21. On February 17, 1997, the Complaint Review Board unanimously exonerated plaintiffs. The members of the Board unanimously voted not to sustain the alleged violations of written policy by plaintiffs, stemming from the December 26, 1996 incident.

22. However, in March, 1997, the Tampa Police Department convened a "Senior Officers' Panel" composed of three majors of the Tampa Police Department.

23. On March 14, 1997, the "Senior Officers' Panel," accompanied by a representative of the City of Tampa's Employee Relations Department, recommended that the Tampa Police Department terminate plaintiffs from their employment.

24. On March 19, 1997, defendant Bushell, as Deputy Chief of the Tampa Police Department, signed a letter of notice to plaintiffs, notifying them that a Pre-Disciplinary Action Hearing would be conducted on April 1, 1997. The hearing was scheduled for defendant Bushell's office.

25. A hearing was conducted on April 1, 1997 in defendant Bushell's office. Defendant Bushell attended.

26. On April 7, 1997, defendant Bushell issued a Notice of Disciplinary Action indicating that plaintiffs are terminated, effective May 5, 1997.

27. Plaintiffs timely filed grievances protesting their termination, but on June 11, 1997 those grievances were finally denied.

28. In December, 2000, the report of an Internal Affairs Bureau investigation of Sergeant Keck and defendant Bushell was released. As a result, the Tampa Police Department placed letters of counseling in both individuals' official files. Neither received any other discipline.

29. The report of the Internal Affairs Bureau revealed that Sergeant Keck was involuntarily admitted for psychiatric evaluation under Florida's Baker Act shortly before the December 24, 1996 incident. Further, defendant Bushell was aware of Sergeant Keck's involuntary commitment, and permitted her to live with his family throughout the relevant December, 1996 - May, 1997 period. Defendant Bushell was also aware that Sergeant Keck returned to duty without a requisite psychiatric evaluation.

30. Despite the fact that he was the final decisionmaker in plaintiffs' termination, defendant Bushell never revealed his personal ties to Sergeant Keck or the material evidence of her involuntary commitment under the Baker Act, occurring immediately before the incident. Defendant Bushell failed as well to recuse himself from any involvement in plaintiffs' disciplinary process. Defendant Bushell's decisions stigmatized plaintiffs, and deprived them of their employment without due process.

31. Defendant Bushell's involvement in plaintiff's termination, in these circumstances, deprived them, without due process of law, of their property and liberty interests in continued, non-stigmatized employment.

## COUNT I
(42 U.S.C. § 1983 Fifth and Fourteenth Amendment claims against defendant Bushell)

Plaintiffs sue defendant Bushell and state:

32. All allegations of paragraphs 1 through 31 are realleged in full and adopted herein.

33. Defendant Bushell violated plaintiffs' rights to be free from the deprivation of property and liberty interests without due process of law, as secured by the Fifth and Fourteenth Amendments to the United States Constitution, and actionable through 42 U.S.C. §1983.

## COUNT II
(Municipal liability claim under 42 U.S.C. §1983 against City of Tampa, Florida)

34. All allegations of paragraphs 1 through 34 are realleged in full and adopted herein.

35. The constitutional deprivations plaintiffs suffered were caused by the official policies, customs, and usages of defendant City of Tampa, Florida, as established by city officials, including defendant Bushell, possessing final policymaking authority. The constitutional deprivations suffered by plaintiffs were consistent with policies and practices effected by the municipality's final policymaker.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs Brian Timmons and Debrynna Gilbert-Alfred pray that this Court will enter relief in the following terms:

1. A judgment for compensatory relief against both defendants;

2. A judgment for back pay and front pay;

3. A judgment of punitive damages against defendants Bushell;

4. An award of costs, including attorney's and expert witness fees, pursuant to 42 U.S.C. § 1988 against both defendants; and

5. Such other relief as the Court deems just and proper.

Finally, plaintiffs request a trial by jury.

Respectfully submitted this 6th day of April, 2001,

FARMER AND FITZGERALD, P.A.

/s/ Matthew Farmer
Matthew P. Farmer, Esq.
Fla. Bar No. 0793469
708 E. Jackson St.
Tampa, Florida 33602
(813) 228-0095
FAX (813) 224-0269

TRIAL COUNSEL FOR PLAINTIFFS